PEOPLE, PLAINTIFF AND APPELLEE, *v.* JIMÉNEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for Murder in the Second Degree.

No. 1414.—Decided June 3, 1920.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE—DISCRETION OF COURT.— The suspicion with which an application for a new trial on the ground of newly discovered evidence is regarded requires a strong showing of diligence

in order that the trial court may, in the exercise of its discretion, grant the new trial, and in the absence of such a showing the motion will be denied.

The facts are stated in the opinion.

*Messrs. J. B. Huyke* and *C. Travecier* for the appellant.

*Mr. J. E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was charged with murder in the second degree and convicted of manslaughter.

Error is assigned as follows: First, that the jury erred in finding defendant guilty of voluntary manslaughter; second, that the court erred in not charging the jury in regard to involuntary manslaughter; third, that the court erred in refusing to grant a new trial, and, fourth, that the court erred in its instructions to the jury.

The evidence is amply sufficient to sustain the verdict and discloses no adequate basis for a charge as to involuntary manslaughter.

The motion for a new trial was based in part on the ground of newly discovered evidence and this is the only aspect of the matter discussed in the brief of the appellant. The evidence so referred to consists (*a*) in a dying declaration, alleged to be in the possession of the *fiscal,* in which it is claimed that the defendant is said to have fired when he saw that he could overcome his antagonist in no other way, and (*b*) in the testimony of a witness who would say that the defendant (?) "had an instrument the size of a knife".

Beyond the bare statement that this evidence could not have been produced at the trial, "even though the defendant had displayed the greatest activity," there is no showing whatever as to diligence. The language just quoted does not even indicate that any diligence whatever was in fact exercised, nor suggest why such diligence, if exercised, would have proved futile.

"In criminal, especially capital, cases, the rule that, in the absence

of due diligence to ascertain and produce evidence, it is unavailable as a ground for a new trial is not applied as strictly as in civil cases. Nevertheless, the suspicion with which an application for a new trial on the ground of newly discovered evidence is regarded requires a strong showing of diligence, and in the absence of such a showing the motion will be denied.'' 16 C. J. 1191.

''The granting or the refusal of the motion rests very largely in the sound discretion of the trial court, the prime consideration being whether substantial justice has been done. In the exercise of this discretion, however, the courts have always listened distrustfully to the claim of newly discovered evidence, and as a ground for a new trial it is not favored. Hence rules have been formulated to guide the court in the exercise of its discretion in the premises, and generally a new trial will be refused unless the application is brought within these rules. In addition to the prime essential that the evidence must be newly discovered, there must have been due diligence to discover and produce it prior to verdict, it must be material and competent, not merely cumulative, or of an impeaching or contradictory character, and must be credible and reasonably sufficient to produce a different verdict on a new trial.'' *Idem,* 1182–83.

The only question discussed under the fourth assignment is the action of the court in referring to the financial and social standing of the defendant and cautioning the jury against being swayed by such considerations. The jury were told, in substance, that the defendant should be tried and convicted or acquitted according to the evidence and the law as given by the court just as any other citizen would be, without regard to any question of pecuniary circumstances or social position. The charge, as given, was plainly not calculated to prejudice the minds of the jury against defendant, but obviously intended to anticipate and counteract any undue influence that the matter so referred to otherwise might have exerted over the jury in its deliberation.

Something seems to have been said in the argument before the jury about the failure of the prosecution to produce the dying declaration mentioned in the motion for a new trial and some stress is laid on the comment made by the

court on such alleged omission. No exception was taken to this or to any portion of the charge and no question is raised in this regard save in connection with the first and third assignments. No request was made for any instruction as to the legal presumption flowing from the wilful suppression of evidence, although the court, at the close of its charge, asked whether any further instructions were desired. Later the defense requested a brief charge in regard to another matter, which was given, but no objection was made to the instructions already given and no other or further instructions were requested.

The testimony of the defendant himself does not make out a clear case of self-defense, but merely suffices to reduce the grade of the offense to manslaughter. Even indulging the presumption that the dying declaration was adverse to the prosecution on the issue of murder, it does not follow nor seem probable that it would be more favorable to defendant than his own version of the affray, which apparently was accepted as true by the jury. In the circumstances the error, if any, was not only waived, but was harmless.

Had defendant been convicted of murder, however, we might have been disposed to take a different view of the matter, notwithstanding the failure properly to raise the question below. We mention this merely in order to draw attention to the desirability of avoiding the unnecessary trouble and expense of new trials and to the ease with which the possibility of a reversal may be eliminated by a due regard for the rights of a defendant on the part of the prosecuting attorney as well as the trial court.

If the declaration in question was, as intimated in the instructions complained of, in fact inadmissible, or open to possible objection by the defense for want of the legal requisite prescribed as a safeguard against possible prejudice to the recognized rights of the defendant in a criminal action, then the better and more commendable practice would

have been to submit the document to the court and to counsel for the defense in the absence of the jury, thus giving the defendant an opportunity to define his attitude. . Such a course would have left no room for suspicion and would have relieved the prosecution from the embarrassment of such a situation as developed after the case had been submitted to the jury. The reversal of a judgment of conviction in a murder case for error resulting from the wilful suppression of evidence by the prosecution would be a serious reflection upon the conduct of counsel for the government and the occasion for such action by this court should never be permitted to arise.

The judgment appealed from must be

. *Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.